McKinney, J.,
delivered the opinion of the- court.
This was an action of ejectment, brought in the circuit court of Wilson county, for the recovery of a tract of land situate in said county, alleged to have escheated to the State. The demise is in the name of the State.
It appears that John Tubb died intestate in the year 1834, seized and possessed of said tract of land. The intestate left a widow, who survived him a few weeks, but no children, and according to the finding of the jury in this case, no heirs. In 1843 this tract of land was sold at execution sale for the taxes thereon, and was purchased by the plaintiff in error, at the price of four dollars and thirty cents; who, on the 16th of July, 1844, received a conveyance from the sheriff, under which he entered shortly thereafter, and continued in the uninterrupted adverse possession of the same from thence up to the commencement of this action, which was in April, 1852; more than seven years from the time of his adverse entry. The jury found in favor of the lessor of the plaintiff, and judgment was rendered accordingly; to reverse which an appeal has been taken to this court.
Several errors in law are- relied upon for a reversal of the judgment:
1. It is said the action _ cannot, be maintained in the name of the State, the legal interest in all escheated property being vested in the board of commissioners of common schools. And in support of this position we are referred to McEwen’s case, 5 Humph., 241; and *358 Hinckle vs. Shadden, 2 Swan, 46. These cases are no authority for the position assumed. Upon the death of the owner of real estate, intestate, without heirs, the title vests directly in the State hy operation of law. It is true, that, being appropriated to the use of common schools, it is placed under the superintendence of the board of commissioners of common schools, and the board are empowered “ to dispose of the same in such manner as they may deem best for the interest of the common school fund.” But the legal title is not vested in the board; it remains in the State, and if the property be adversely held, an action for its recovery can alone be maintained in the name of the State. Such is the inevitable conclusion upon general principles. But the act of 1829, ch. 48, § 1, which is not changed by any subsequent legislation, in express terms requires that the suit in such case shall be “in the name of the State.”
2. It is insisted that the action is barred by the statute of limitations of 1819. To this proposition the simple answer is, that the proviso to the third section of the statute expressly declares “that this act shall have no bearing on the lands reserved for the use of schools.”
The case of Sampson vs. The University of Nashville, 2 Swan, 600, does not support the position contended for. The point in judgment in that case, and the only point decided, is, that lands held by the University under a grant from the State of Tennessee, are not lands “reserved for the use of schools,” within the meaning of the proviso. The decision does not, nor was it intended to question the correctness of the pro *359 position, that all lands appropriated by law to the use of schools, are to be considered as within the proviso, and consequently exempted from the operation of the statute of limitations. And by the act of 1827, ch. 61, § 1, the substance of which was incorporated into the amended constitution of 1831, (art. 11, § 10,) all escheated property is appropriated to the use of common schools.
3. But the act of 1850, ch. 51, has been referred to for the purpose of showing that the title to the land in question, is, by operation thereqf, outstanding in the heirs of the widow of John Tubb. This act was passed upon a very liberal construction of the provision contained in the amended constitution, (article 11, § 11,) which confers power upon the Legislature to pass laws, “authorising heirs or distributees to receive and enjoy escheated property.” The first section provides, “that hereafter when any person shall die intestate, leaving no heirs at law capable of inheriting real estate under the laws of Tennessee, but leaving a widow, then and in that case, the said widow shall be entitled in fee simple, to all the real estate of which her said husband died, seized and possessed,” &c. The second section declares, “that the provisions of this act shall be extended to and embrace all cases in which persons may have heretofore died intestate, as mentioned in the first section of this act, as well as those who may hereafter die intestate; and for the recovery of such real estate suits have not been brought, or, if brought, have not been determined.” .
"Whether or not the provisions of either of the foregoing sections are subject to constitutional objections, *360 is a question not presented for our consideration in the present case. Admitting the retrospective feature of the second section to be unobjectionable, it is very clear that it can apply only in favor of widows who were living at the time of the passage of the act, and that it can have no application in favor of the heirs of a widow, who, as in the present case, died previously.
4. The rule as to the presumption of the death of a person after seven years’ absence, was not correctly stated in the charge of the Court. This presumption of law, independent of the verdict of the jury upon the facts, does not attach, unless it appear that the person has been absent from his domicil, or last place of residence, without intelligence concerning him for the period of seven years. Though a jury may find the fact of death, if the circumstances of the case concur, from the lapse of a shorter period than seven years.
But the error in this respect, was obviated by other portions of the charge.
Let the judgment be affirmed.